IN RE the ANNEXATION OF the SMITH, BECKER AND McCORMICK PROPERTIES:

TOWN OF CAMPBELL, Plaintiff-Appellant,†

v.

CITY OF LA CROSSE, Defendant-Respondent.†
[Case No. 02-2541.]

IN RE the ANNEXATION OF the EDWARDS PROPERTY:

TOWN OF CAMPBELL, Plaintiff-Respondent,

v.

CITY OF LA CROSSE, Defendant-Appellant.†

Court of Appeals

*Nos. 02–2541, 02–2586. Submitted on briefs May 14, 2003.—
Decided November 13, 2003.*

2003 WI App 247

(Also reported in 673 N.W.2d 696.)

† Petition to review denied 2-24-04.

253

255

On behalf of the plaintiff-appellant, Town of Campbell, the cause was submitted on the briefs of *Roger W. Clark* and *John D. Claypool, Herrling, Clark, Hartzheim & Siddall, Ltd.*, Appleton.

On behalf of the defendant-appellant, City of La Crosse, the cause was submitted on the briefs of *Patrick J. Houlihan*, City Attorney.

On behalf of the defendant-respondent, City of La Crosse, the cause was submitted on the brief of *Patrick J. Houlihan*, City Attorney.

On behalf of the plaintiff-respondent, Town of Campbell, the cause was submitted on the brief of *John D. Claypool, Herrling, Clark, Hartzheim & Siddall, Ltd.*, Appleton.

Before Dykman, Vergeront and Lundsten, JJ.

¶ 1. VERGERONT, J. This appeal concerns the Town of Campbell's challenge to four ordinances of the City of La Crosse annexing certain properties in the Town. The Town appeals the trial court's ruling denying its motion to amend the complaints regarding the Smith, Becker, and McCormick annexations to add a ground for invalidating those annexations and also appeals the determination that those annexations did not violate the rule of reason. The City appeals the trial

261

court's determination that the Edwards annexation violated the rule of reason and that annexation was therefore invalid.[1]

¶ 2. We conclude the trial court's decision denying the Town's motion to amend was based on an error of law because WIS. STAT. § 66.021(10) (1995–96)[2] does not prohibit an amendment to a complaint after ninety days from the annexation ordinance. Whether to allow an amendment is, we hold, a matter committed to the trial court's discretion. Because the trial court did not exercise its discretion, we remand for that purpose. If on remand the trial court denies permission to amend, then the resolution of the challenges based on the rule of reason will terminate these actions. We therefore address the merits of the appeals. We agree with the trial court that the Smith, Becker, and McCormick annexations meet each of the three components of the rule of reason. We also agree with the trial court that the Edwards annexation does not meet the need component of the rule of reason and is invalid on that basis. We therefore affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

[1] The Smith, Becker, and McCormick annexations are the subject of appeal no. 02–2541; the Edwards annexation is the subject of appeal no. 02–2586. Based on the parties' stipulation, we have consolidated the appeals. The maps of the annexations are attached to this opinion.

[2] All references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted. The statute at issue was renumbered in part, effective January 1, 2001. WISCONSIN STAT. § 66.021(2) is now designated WIS. STAT. § 66.0217(3), and § 66.021(10) is now designated § 66.0217(11). 1999 Wis. Act 150, §§ 47, 58. The current version of § 66.021(10) has been modified somewhat but the changes are not relevant to our decision.

## BACKGROUND

¶ 3. The City passed ordinances approving the Smith, Becker, and McCormick annexations on December 17, 1996, and the Edwards annexation on January 21, 1997. The Town filed complaints challenging the validity of each of the annexations on the grounds that none met the contiguity requirement of WIS. STAT. § 66.021(2)³ and that none met the rule of reason. The trial court concluded that none of the annexations met the contiguity requirement because each was separated from the City of La Crosse by the Black River and did not touch or contact City land. On appeal, this court reversed in a decision issued on August 30, 2001, and

---

³ WISCONSIN STAT. § 66.021 reads in relevant part:

(2) METHODS OF ANNEXATION. Subject to s. 66.023(7), territory contiguous to any city or village may be annexed thereto in the following ways:

(a) *Direct annexation.* A petition for direct annexation may be filed with the city or village clerk if it has been signed by either of the following:

1. A number of qualified electors residing in the territory subject to the proposed annexation equal to at least the majority of votes cast for governor in the territory at the last gubernatorial election, and either of the following:

a. The owners of one-half of the land in area within the territory.

b. The owners of one-half of the real property in assessed value within the territory.

2. If no electors reside in the territory subject to the proposed annexation, by either of the following:

a. The owners of one-half of the land in the area within the territory.

b. The owners of one-half of the real property in assessed value within the territory.

263

remanded to the trial court. We held that the property of the City and the annexed properties meet at the center of the riverbed and are therefore "contiguous" within the meaning of § 66.021(2). *Town of Campbell v. City of La Crosse*, 2001 WI App 201, ¶ 19, 247 Wis. 2d 946, 634 N.W.2d 840.

¶ 4. After remand, the Town in March 2002 filed a motion for a declaratory judgment that the Smith, Becker, and McCormick annexations were invalid because they erroneously included riverbed property of non-consenting property owners. The Town also apparently moved to amend the three complaints to add this ground.[4] The trial court denied the motions. It concluded that this ground was not alleged in the complaints; it also concluded that because Wis. Stat. § 66.021(10) contemplated that a complaint contesting the validity of an annexation state the grounds of invalidity and be filed within ninety days of the adoption of the annexation ordinance, the Town could not at this time add an additional ground for invalidity.

¶ 5. The court then conducted one trial for all four annexations to determine whether they violated the rule of reason. The rule of reason has three components: (1) exclusions and irregularities in boundary lines must not be the result of arbitrariness; (2) there must be some present or demonstrable future need for

---

[4] The Town does not provide a record citation to this motion or motions and we cannot locate any in the record. However, from the transcript of the hearing on March 25, 2002, the court's written order on September 19, 2002, and the briefs of the parties, it appears that the Town did move both for a declaratory judgment on this ground and for permission to amend the three complaints to add this ground for invalidation.

the annexation; and (3) there must be no other factors that constitute an abuse of discretion on the part of the municipality. *Town of Menasha v. City of Menasha*, 170 Wis. 2d 181, 189, 488 N.W.2d 104 (Ct. App. 1992). With respect to the Becker, Smith, and McCormick annexations, the court determined that the boundary lines were not arbitrary or capricious, that both the City and the petitioners had a reasonable need for the annexation, and that the City did not in any other way abuse its discretion. The court therefore concluded that these annexations were valid and entered judgment dismissing these complaints.

¶ 6. With respect to the Edwards annexation, the court determined that it was of irregular shape, contained exclusions that were arbitrary, cut the Town in half, and highly disrupted the Town's reasonable provision of municipal planning and services. The court found that the Town provided this petitioner, Jack Edwards, with all municipal services except water, but that Edwards had access to potable water. The court found there was no evidence that his wells were failing, there were no concrete plans for him to obtain water from the City, and he did not need the annexation in order to have potable water. The court concluded this annexation was invalid and entered judgment ordering that the property revert to the Town.

## DISCUSSION

*Town's Motion to Amend Complaints*

¶ 7. The Town contends the court erred in not permitting an amendment to the Smith, Becker, and McCormick complaints to add that these annexations are invalid because they included riverbed property of non-consenting property owners. The Town asserts

that the City followed the statutory procedure for annexations that include only consenting property owners, but should have followed a different procedure for annexations that include non-consenting property owners. *Compare* Wis. Stat. § 66.021(12) (now Wis. Stat. § 66.0217(2) (2001–02)) with § 66.021(2)(a) (now § 66.0217(3)(a) (2001–02)). According to the Town, it was not until this court's decision concluding there was contiguity that "it was understood by the parties" that the City had followed the wrong statutory procedure.

¶ 8. The Town first argues that under Wis. Stat. § 802.02(1), which governs the general rule of pleadings, the allegation in each complaint that the annexation was "invalid as a matter of law" was sufficient to encompass any basis for invalidity. In the Town's view, it did not need to plead specific grounds for invalidity. Alternatively, the Town contends, if it did need to plead specific grounds, the court erred in concluding the amendments were barred by the ninety-day statute of limitations and failed to properly exercise its discretion because it did not analyze whether the amendments would prejudice the City. According to the Town, the City would not have been prejudiced.

¶ 9. The City responds that the court did not rule that the amendments were barred by the statute and did properly exercise its discretion in denying permission to amend after considering the proper factors.

¶ 10. We cannot agree with the City's characterization of the trial court's decision. In denying permission to amend the complaints, the court explained that the motion to amend was "beyond the statute of limitations . . . which is ninety days." The court also stated that the statute governing challenges, Wis. Stat. § 66.021(10), indicated that the grounds for the petition had to be stated with specificity, the Town did not plead

266

this specific ground, and the appeal did not toll the statute of limitations. The written order entered by the court likewise stated that the court was denying the motion to amend the pleadings on the ground that "the statute of limitations bars the Plaintiff from raising the issue that these annexations are invalid due to the inclusion of non-consenting property owners."

██

¶ 11. Therefore, we must decide first whether the Town was required by statute to specifically allege that a ground of invalidity was the inclusion of the property of non-consenting owners; and, second, if the Town was so required, whether it was prohibited by statute from amending later than ninety days after the annexation ordinance was passed. The construction of statutes when the relevant facts are not disputed is a question of law, which we review de novo. *State v. Setagord*, 211 Wis. 2d 397, 405–06, 565 N.W.2d 506 (1997).

¶ 12. WISCONSIN STAT. § 802.02(1) provides:

> **General rules of pleading. (1)** CONTENTS OF PLEADINGS. A pleading or supplemental pleading that sets forth a claim for relief, whether an original or amended claim, counterclaim, cross claim or 3rd-party claim, shall contain all of the following:
>
> (a) A short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief.
>
> (b) A demand for judgment for the relief the pleader seeks.

¶ 13. WISCONSIN STAT. § 66.021(10) provides:

(10) ACTION. (a) An action on any grounds whatsoever, whether denominated procedural or jurisdictional, to contest the validity of an annexation shall be commenced within the time after adoption of the annexation ordinance provided by s. 893.73(2).

(b) An action contesting an annexation shall be given preference in the circuit court.

WISCONSIN STAT. § 893.73(2) provides that an action contesting the validity of an annexation under § 66.021(10) is "barred unless brought within 90 days after the adoption of the . . . annexation ordinance . . . contested."

¶ 14. We do not agree with the Town that an allegation that an annexation is "invalid as a matter of law" satisfies the requirements of WIS. STAT. § 802.02(1). Although the concept of notice pleading embodied in § 802.02(1) requires less particularity in pleading than the previous statute, "the complaint must still show a justifiable claim for relief; it must still contain a statement of the general factual circumstances in support of the claim presented." *Alonge v. Rodriquez*, 89 Wis. 2d 544, 552, 279 N.W.2d 207 (1979) (quoting Judicial Council Committee's Note, 1974, WIS. STAT. ANN. § 802.02 (West 1994)). In the context of a challenge to an annexation, a complaint must, in addition to identifying the annexation, allege some facts that, if true, entitle the pleader to a ruling that the annexation is invalid. The Town no doubt understood this because the complaints do allege facts supporting its claims that it is entitled to an invalidation of the annexations because the annexations lack contiguity and violate the

rule of reason. However, there are no allegations concerning the procedure followed in enacting the ordinances or the persons who, signed the petitions. The complaints therefore do not contain a statement of the general factual circumstances that entitle the Town to relief on the ground that the wrong procedure was followed because the annexations include property of non-consenting owners.

¶ 15. We thus agree with the trial court that the complaints were insufficient to entitle the Town to a ruling that the annexations were invalid because the procedure for non-consenting property owners was not followed. However, we disagree that Wis. Stat. § 66.021(10) prohibits an amendment to the complaint after the ninety days for filing the original complaint has run. Nothing in the statute indicates this was the legislature's intent. Wisconsin Stat. § 802.09(1) grants a court the discretion to allow amendments to pleadings after six months from the filing of the summons and complaint and after the date in a scheduling order. If the claim asserted in the amended pleading arose out of the transaction or occurrence set forth in the complaint, then the amendment relates back to the filing of the original pleading. Section 802.09(3). In other words, if the original pleading was filed within the statute of limitations and the conditions of § 802.09(3) are met, the fact that a statute of limitations has expired between the filing of the summons and complaint and the motion to amend is not a reason to deny a motion to amend. *See Biggart v. Barstad*, 182 Wis. 2d 421, 428–29, 513 N.W.2d 681 (Ct. App. 1994).[5] Wisconsin Stat. chs.

---

[5] In *Biggart v. Barstad*, 182 Wis. 2d 421, 430, 513 N.W.2d 681 (Ct. App. 1994), we observed that adequate notice in the

801 to 847 apply in all civil actions and special proceedings "except where different procedure is prescribed by statute or rule." WIS. STAT. § 801.01(2). We see nothing in § 66.021(10) that either directly or indirectly prescribes a different procedure for amendment of pleadings in this case than that provided in § 802.09(1) and (3).

■

¶ 16. Of course, the fact that the proceeding is an annexation proceeding is an appropriate factor for a court to take into account in exercising its discretion on whether to permit an amendment. WIS. STAT. § 66.021(10)(b) requires that courts give preference to challenges to annexations. This evinces the legislature's intent that these challenges be expeditiously resolved, and the court may properly consider the effect, if any, of an amendment on the expeditious resolution of a challenge. However, we see no basis for concluding that a trial court is prohibited from allowing an amendment after the ninety-day statute of limitations has passed.[6]

---

original complaint of the transaction, event, or occurrence out of which the amended claims arise is essential to the relation back of an amendment made after the statute of limitations has expired.

[6] The parties debate the applicability of *Town of Blooming Grove v. City of Madison*, 4 Wis. 2d 447, 90 N.W.2d 573 (1958). At the time relevant to that case, the provision for challenging annexations provided a sixty-day time period for nonjurisdictional defects and there was no statutory time period for jurisdictional defects. The court, however, concluded that jurisdictional objections had to be made within a reasonable time. *Id.* at 457. Because the motion to supplement the complaint to add a jurisdictional defect was made almost three years after the adoption of the annexation ordinance, the court concluded it was not made within a reasonable time, and therefore the circuit court had erroneously exercised its discretion in grant-

¶ 17. Because the court erroneously concluded any amendment after ninety days was prohibited, it did not exercise its discretion in deciding whether or not to allow these amendments. We are persuaded the proper course is to remand to allow the trial court to make this discretionary decision.

*Smith, Becker, and McCormick Annexations*

¶ 18. The Town contends the trial court erred in determining that the Smith, Becker, and McCormick annexations did not violate the rule of reason because: (1) the shape is irregular and the City was the "true controlling force behind the drawing of the boundary lines"; (2) the City did not demonstrate it had a need for the territory within the annexations, and the Town was capable of providing the necessary services to the annexed territories; and (3) the City acted arbitrarily and capriciously in these annexations.

¶ 19. In WIS. STAT. ch. 66, the legislature has conferred upon cities and villages broad powers to annex unincorporated territory. *Town of Pleasant Prairie v. City of Kenosha*, 75 Wis. 2d 322, 326, 249 N.W.2d 581 (1977). The doctrine known as the "rule of reason" is applied by the courts to ascertain whether the power delegated to the cities and villages has been abused in a given case. *Id.* at 326–27. When a challenge is made to an annexation ordinance based on the rule of reason, the ordinance enjoys a presumption of validity and the challenger has the burden of showing that the annex-

ing the motion. *Id.* at 456–58. Given the differences between the annexation statute and rules of civil procedure relevant in *Town of Blooming Grove* and those applicable here, that case does not provide guidance in construing the statutes at issue here.

ation violates the rule of reason. *Id.* at 327. "The rule of reason does not authorize a court to inquire into the wisdom of the annexation before it or to determine whether the annexation is in the best interest of the parties to the proceeding or of the public. These matters are inherently legislative and not judicial in character." *Id.* For this reason, "the circuit court is directed to be highly deferential to the actions taken by the City in annexing the property." *Town of Delavan v. City of Delavan*, 176 Wis. 2d 516, 539, 500 N.W.2d 268 (1993).

¶ 20. When we review a trial court's determination on the rule of reason, we accept its findings of fact unless they are clearly erroneous. *Id.* at 538–39. However, whether those findings meet the legal standards of the rule of reason presents a question of law, which we review de novo, *Town of Menasha*, 170 Wis. 2d at 190, while bearing in mind the deferential standard we apply to the City's decision to annex. *Town of Delavan*, 176 Wis. 2d at 539.

¶ 21. Under the first component of the rule of reason, the exclusions and irregularities in boundary lines of annexations must not be the result of arbitrariness. *Town of Menasha*, 170 Wis. 2d at 190. The general rule is that where direct annexation proceedings are initiated by property owners, the annexing municipality may not be charged with arbitrary action in drawing the boundary lines. *Town of Sugar Creek v. City of Elkhorn*, 231 Wis. 2d 473, 479, 605 N.W.2d 274 (Ct. App. 1999). In such cases the choice of boundaries is a matter of discretion by the petitioners. *Town of Pleasant Prairie*, 75 Wis. 2d at 339. They have the right under the statute to act in "light of their desires and their best

interests as they [see them]" when they initiate a direct annexation proceeding. *Town of Waukesha v. City of Waukesha*, 58 Wis. 2d 525, 530, 206 N.W.2d 585 (1973). Petitioning property owners are under no obligation to include areas in the annexation that are of no concern to them. *Id.* at 532: It is permissible for them to include only their own property. *Id.*, *see also Town of Waukechon v. City of Shawano*, 53 Wis. 2d 593, 598, 193 N.W.2d 661 (1972). They may also determine the boundaries so as to insure the annexation's success. *Town of Pleasant Prairie*, 75 Wis. 2d at 342.

¶ 22. An exception to this general rule occurs when the municipality is the "real controlling influence" in selecting the boundaries even though the property owners are the petitioners. *Id.* at 339. In such a case, the municipality is charged with any arbitrariness in the boundaries. *See Town of Menasha*, 170 Wis. 2d at 193. " 'Influencing' the proceedings, in this context, means more than providing mere technical assistance or recommendations to the petitioners; rather it means conduct by which the annexing authority dominates the petitioners so as to have effectively selected the boundaries." *Id.* at 192 (citations omitted).

¶ 23. Applying this standard in *Town of Pleasant Prairie*, the court concluded the city did not dominate the petitioners such that it should be considered to have selected the boundaries. 75 Wis. 2d at 340. In that case, the petitioners conferred with the city planner before filing the petition, the city planner explained the statutory requirements and procedures, including the need to include certain property to meet the contiguity requirement, and the city suggested the inclusion of some additional property. *Id.* The planner also assisted the petitioners in preparing the necessary documents

and maps. *Id.* at 328–29. However, the court noted, there was no evidence to show that the enactment of the annexation ordinance was conditioned on the petitioners following that suggestion or that the decision on what land to include was not made by the petitioners. *Id.* at 340. In contrast, in *Town of Menasha* this court affirmed the trial court's conclusion that the city should be charged with selecting the boundaries based on the trial court's findings that the petitioners wished to have only their own land annexed in order to obtain city services and had no interest in including an additional lot, which the city included when it developed the boundary lines. 170 Wis. 2d at 192.

¶ 24. The trial court here found that the annexations were unanimous, direct annexations in which the petitioners included only the property they owned. The court also found the City did not control these annexations, but provided only reasonable assistance, and the petitioning property owners determined what the boundaries of the proposed annexations were to be. These findings are supported by the evidence. The city attorney testified that these petitioners determined what would be included in the annexations and the testimony of the petitioners was consistent with this.

¶ 25. In support of its argument that the City was the controlling influence, the Town points to evidence that the city attorney provided the forms to the petitioners and none of the petitioners prepared the maps or the legal descriptions. However, the evidence was that city personnel prepared the maps and legal descriptions based on what the petitioners told them they wanted to include and on what the city personnel understood to be the contiguity requirements. Performing these acts and providing forms is no more than the technical assistance considered appropriate in *Town of*

*Pleasant Prairie*, 75 Wis. 2d at 328–29, 340. The Town also points to the evidence that, after the Town had first published a notice of its intent to incorporate, the city attorney discussed with the petitioners the effect of that proceeding on annexation and advised them that if the annexation proceedings were instituted after the publication date of the notice of intent to incorporate, the annexations might be void. However, there is no evidence that the city attorney or anyone else connected with the City pressured the petitioners to take any action because of the notice of the Town's intent to incorporate. Indeed, Richard McCormick testified that he was not told by the City that the annexations ought to move along quickly because of the Town's intent to incorporate; rather, this was his own opinion.

¶ 26. The Town is apparently of the view that, even if the City is not the controlling influence, we may examine the boundaries and declare them arbitrary because of their shapes, which, the Town contends, are irregular. We have previously recognized that there is authority for the proposition that a court may examine the boundaries of an annexation if it has an irregular shape even though the boundaries are determined by the property owners. We did so in *Town of Medary v. City of La Crosse*, 88 Wis. 2d 101, 115–16, 277 N.W.2d 310 (Ct. App. 1979), based on *Town of Mt. Pleasant v. City of Racine*, 24 Wis. 2d 41, 46–47, 127 N.W.2d 757 (1964), and again in *Town of Menasha*, 170 Wis. 2d at 191 n.3. In *Town of Mt. Pleasant*, the supreme court considered a challenge based on lack of contiguity and applied the rule of reason's requirement that boundaries not be arbitrary to invalidate a "corridor" or "strip" annexation—where the 145–acre track sought to be annexed by property owners was connected to the City of Racine by a corridor that varied in width from 152

feet to 306 feet. 24 Wis. 2d at 43, 47. This, the court concluded, did not meet the statutory requirement of the rule of reason. *Id.* at 47.

¶ 27. *Town of Mt. Pleasant* is a difficult case to harmonize with subsequent supreme court cases that recognize the right of petitioning property owners to include only their own properties and state that in such situations the annexing municipality is not charged with arbitrariness, as long as it is not a controlling influence. *See, e.g., Town of Pleasant Prairie*, 75 Wis. 2d at 339; *Town of Waukesha*, 58 Wis. 2d at 532; *Town of Waukechon v. City of Shawano*, 53 Wis. 2d at 598; *Town of Lyons v. City of Lake Geneva*, 56 Wis. 2d 331, 337–38, 202 N.W.2d 228 (1972). In *Town of Medary*, we read *Town of Mt. Pleasant* as not necessarily invalidating irregular boundaries of annexations brought by property owners, 88 Wis. 2d at 117; and in *Town of Menasha* we had no need to discuss *Town of Mt. Pleasant* because the shape of that annexation was not at issue. 170 Wis. 2d at 192 n.3. In this case it is even more difficult to apply the reasoning in *Town of Mt. Pleasant* because the primary issue there was whether there was contiguity, and here we have already decided that the contiguity requirements for these annexations were met. *Town of Campbell*, 247 Wis. 2d 946, ¶ 19. We thus conclude the better course is to follow the analysis in *Town of Pleasant Prairie*, 75 Wis. 2d at 339, to take one example, under which there is not a violation of the first component of the rule of reason if the property owners are the petitioners and the city is not a controlling influence.[7]

---

[7] Nonetheless, we believe that clarification by the supreme court on the significance of *Town of Mt. Pleasant v. City of*

¶ 28. Based on the factual findings of the trial court, which are supported by the evidence, we conclude the boundary lines were not the result of arbitrariness by the City.

¶ 29. With respect to the need component of the rule of reason, the Town asserts there is no evidence of the City's need because the properties annexed were already developed; therefore, the Town reasons, they could not serve a need for additional areas for residential, commercial, or industrial development. The City does not dispute this, but instead responds that the need component of the rule of reason may be satisfied by the need of the property owners of the annexed property. The Town in reply does not expressly disagree with this proposition of law, but its argument appears to imply that the need of the annexed property owners is not sufficient.

¶ 30. The City's position that the need of the annexed property owners is sufficient is supported by *Town of Lafayette v. City of Chippewa Falls*, 70 Wis. 2d 610, 629–30, 235 N.W.2d 435 (1975). In that case the court considered a challenge to an annexation of state-owned land on which was located a state institution; the petition was initiated by the State. *Id.* at 614, 629. The primary basis for the challenge was that the annexing city did not have a need for this property. *Id.* at 625. The court determined that the "only traditional factor deemed relevant to a finding of need of the city . . . is the prior extension by the city of water and sewer services to the [institution]" and that the predominant

*Racine*, 24 Wis. 2d 41, 46–47, 127 N.W.2d 757 (1964), in light of later case law, would be beneficial to the development of the law in this area.

need was the State's need for services that the city, but not the towns, could provide. *Id.* at 627–28.[8] However, the court explained:

> The annexation ordinance was passed in response to a petition by the state to the city. One author has suggested that the need element serves a useful purpose in furthering the public policy favoring orderly growth of urban areas by preventing irrational "gobbling up of territory." The factors deemed relevant to establishing need are best suited to avoiding this danger where the annexation proceeding is instituted by the annexing municipality. . . . Where the annexation ordinance is adopted at the request of the electors and landowners in the subject area, however, this danger may be avoided by assuring that the request was not the result of any undue influence or pressure from the annexing municipality. The relevance and importance of the "will or wish of the petitioners" was emphasized in this court's latest annexation case.

*Id.* at 629 (citation and footnote omitted).

---

[8] The court in *Town of Lafayette v. City of Chippewa Falls*, 70 Wis. 2d 610, 626, 235 N.W.2d 435 (1974), stated that it had previously approved the following factors to determine whether the need requirement was met: (1) a substantial increase in population; (2) a need for additional area for construction of homes, mercantile, manufacturing, or industrial establishments; (3) a need for additional land area to accommodate the present or reasonably anticipated future growth of the municipality; and (4) the extension of police, fire, sanitary protection, or other municipal services to substantial numbers of residents of adjacent areas. The court also stated the need requirement had been met in a case where the annexation was an attempt to eliminate a possible pollution problem and to expand residential areas in the vicinity of schools. *Id.* (citing *Town of Waukechon v. City of Shawano*, 53 Wis. 2d 593, 193 N.W.2d 661 (1972)).

¶ 31. Several subsequent cases consider the needs of the annexed territory along with the needs of the annexing municipality in concluding that the need component is met. *See, e.g., Town of Pleasant Prairie*, 75 Wis. 2d at 338–39; *Town of Delavan*, 176 Wis. 2d at 539–40; *Town of Sugar Creek*, 231 Wis. 2d at 482–83. While *Town of Lafayette* appears to be the only case in which the need of the annexed property owners was considered sufficient by itself, the Town has not brought to our attention any case that limits or overrules that case. We therefore conclude the rationale of *Town of Lafayette* applies here. The petitioners are the property owners and the City did not exert a controlling influence. One of the "traditional" needs of the City has been the extension of services to residents in the annexed territory. *See Town of Lafayette*, 70 Wis. 2d at 627. Following *Town of Lafayette*, we conclude that if the petitioners are in need of services the Town cannot provide but the City can, the need factor is met.

¶ 32. The trial court here found that the petitioners had an urgent need for clean and odor-free water, which the Town could not supply. Among the specific findings the court made regarding the petitioners' need for better quality water were the following. The property owners in each of the three annexations were concerned about the quality of water from their private wells, which was of very poor quality, foul smelling, and foul tasting. The Town does not have the ability to provide clean, odor-free water. Smith himself had spent approximately $5,000 over two and one-half years on a filtration system in an effort to improve the quality of the water from his well without success; he still needed to obtain drinking water from another source; and the well water stained the family's clothes and the house.

Robert Swanson, who owned property in the Becker annexation, had had problems with water quality for years and had contacted the Town on several occasions for assistance in resolving those problems, but the Town could not improve the quality. Since the annexations, the households in the annexed territories have been supplied with municipal water by the City of La Crosse and that has eliminated the problems caused by their private wells.

¶ 33. These findings are supported by the evidence. The Town does not argue otherwise, but instead asserts that the City could sell water to the property owners without requiring annexation. However, the City is under no obligation to do so. *Town of Sugar Creek*, 231 Wis. 2d at 485 (municipalities may condition the extension of sewer services upon annexation).

¶ 34. The Town also argues that the need for better quality water does not justify the annexations because the testimony shows that annexation will make the delivery of services by the Town to the rest of the community administratively more difficult and complicated. Thus, the Town asserts, the annexations are not in the interest of the Town community as a whole. However, whether an annexation is the interest of the public is not one of the factors in the rule of reason and is not for the courts to decide. *Town of Pleasant Prairie*, 75 Wis. 2d at 333.

¶ 35. Based on the facts as found by the trial court, which are supported by the record, we conclude the trial court correctly decided that the petitioners had a reasonable need for the annexations that the City could meet.

¶ 36. Finally, the Town contends, the City acted arbitrarily and capriciously in two additional ways.[9] First, the Town argues, George Hall, then the director of municipal boundary review in the Wisconsin Department of Commerce, submitted a letter to the city attorney expressing his concerns about the annexations and the City ignored these concerns. Second, the Town argues that the City put economic pressure on the property owners because it would not provide water unless they annexed, and this is a ground for invalidation under *Town of Fond du Lac v. City of Fond du Lac*, 22 Wis. 2d 533, 539–40, 126 N.W.2d 201 (1964).

¶ 37. Under the third component of the rule of reason, the court is to consider evidence that the municipality abused its discretion for reasons other than those considered under the first two components. *Town of Medary*, 88 Wis. 2d at 124. The trial court here concluded the Town presented no evidence that the City had abused its discretion in enacting the annexation ordinances. We agree with this conclusion.

¶ 38. With respect to Hall's letter, at the time of the annexation, WIS. STAT. § 66.021(11) provided that within twenty days of receiving a required notice of a proposed annexation, the Department of Commerce could notify both the town in which the territory proposed for annexation lay and the proposed annexing municipality of its opinion that the annexation was against the public interest; the department then had ten days to advise the town and municipality of the

---

[9] Some of the arguments the Town makes under this section of its brief we have already addressed under the first component of the rule of reason: that the city attorney encouraged the petitioners to file the annexation petitions because of the Town's impending incorporation, provided the forms, and drew the boundary lines.

281

reasons for its opinion. The statute also stated the annexing municipality "shall review the advice before final action is taken."[10] *Id.* Hall sent two letters, one dated November 20, 1996, and one dated December 13, 1996. The first letter was a form letter stating that, if Hall did not inform the City within twenty days that the annexations were against public interest, the City could assume they were not against the public interest. The December 13 letter, obviously not received within that twenty-day period, did not state the annexations were against the public interest, but did state Hall's concerns with the annexations: "significant 'rule of reason' questions appear to be present, based in part on the . . . checkerboard pattern stemming from the shape of any or all of the proposed petitions. Enactment . . . may result in significant confusion for the delivery of public services, including police, fire, and emergency medical service." The city attorney testified that he shared this letter with the common council and the council considered the letter.

¶ 39. Although the trial court did not make specific findings of fact regarding the Hall letters, the relevant facts are not disputed. Hall did not issue an opinion stating that these three annexations were against the public interest within twenty days of notice of the proposed annexations. Even if he had, the statute requires only that the City consider it, and the City did

_____

[10] The current version of the statute, WIS. STAT. § 66.0217(6)(a), now requires the Department of Administration to send notice of whether or not in its opinion the annexation is in the public interest.

consider the letter he wrote.[11] Accordingly, we reject the contention that the City's decision to proceed with the annexations in spite of Hall's letter is arbitrary conduct that invalidates the annexation.

¶ 40. We also reject the Town's argument that the City's failure to provide water to the property owners without an annexation constitutes an abuse of discretion. As we have stated above, the City was under no obligation to provide services to Town residents without an annexation. *See Town of Sugar Creek*, 231 Wis. 2d at 485. *Town of Fond du Lac* does not support a different result. There the annexing municipality was one of the two property-owning petitioners. *Town of Fond du Lac*, 22 Wis. 2d at 536. The municipality obtained in writing the agreement of two electors to sign the petition in exchange for permitting them to remain rent free for one year in the home the municipality had just purchased from them. *Id.* The municipality notified two other electors, its tenants, that they would be evicted from their residence if they did not sign the petition. *Id.* at 536–37. The court viewed this conduct as the equivalent of "buying votes" and invalidated the four signatures. *Id.* at 540. There is no basis for comparing that conduct to the City's legitimate decision not to supply water to persons who are not within the City.

¶ 41. In summary, we conclude that the trial court's factual findings are supported by the record, and based on these findings, we agree with the trial court

[11] Hall himself acknowledged in his testimony that his opinions were advisory only and the statute requires no more than that the City consider them.

that the Town did not establish that a component of the rule of reason was not met.

*Edwards Annexation*

¶ 42. The Edwards annexation consists of four improved lots of single-family homes, a mobile home park on thirty-eight lots, two swamp parcels, eleven vacant lots, a connecting public right of way, and land to the middle of the Black River. The trial court found that the wetlands could not be developed and that only 400,597 square feet, somewhat less than ten acres, were undeveloped and suitable for development.

¶ 43. The City challenges the trial court's determination that the Edwards annexation violated the rule of reason. Although the City does so on a number of grounds, we address only the need component of the rule of reason because that is dispositive. The City asserts that the trial court made two errors in determining there was no reasonable need for the annexation. First, the City asserts, even though Jack Edwards did not need water now because his wells were providing good quality water, his desire to have a more economical and reliable source of water is a reasonable need. The City also contends that it needed the undeveloped land in the annexed property for residential development so that it could accommodate the projected population growth.[12]

---

[12] In its reply brief the City asserts that it demonstrated a need for "developable land and for completing the water 'loop' system." The City did not mention the need to complete the water loop system in its first brief and this single phrase is the only reference in the reply brief. We therefore do not decide whether the need to complete the water "loop" system constitutes a reasonable need of the City for the annexation. *State v.*

¶ 44. At the trial in April 2002, Edwards testified that he was not receiving water from the City, and he had no problem with the water quality in his wells. He had had no meeting with City personnel since the annexation in January 1997 to discuss obtaining water; had not requested water since then; had no plans for a meeting; had no idea when, if ever, he would obtain water from the City; and had never talked to City personnel about how much it would cost him to get water from the City. It was his desire, however, to eventually have water service for his property. He believed, based on what he had heard at a Town meeting, that water from the City would be cheaper for his property than from the Town, if the Town were to have its own water system, and this was his motive for wanting to have his property annexed. However, he acknowledged that the referendum for the Town to supply water had been defeated. He also acknowledged it was pure speculation whether he ever would receive water from the City, and, if he did, what the cost would be; he agreed the City might charge him more than the Town.

¶ 45. The planner for the City testified that he was aware of no plans to provide water to Edwards' property and was aware of no cost studies regarding providing water to his property.

¶ 46. We agree with the trial court that this record shows no reasonable present or future demonstrable need of Edwards. As the City implicitly acknowl-

*Chu*, 2002 WI App 98, ¶ 42 n.5, 253 Wis. 2d 666, 643 N.W.2d 878 (we do not address issues raised for the first time in reply briefs); *ABKA Ltd. P'ship v. Bd. of Review*, 231 Wis. 2d 328, 349 n.9, 603 N.W.2d 217 (1999) (we do not address undeveloped arguments).

edges, Edwards had a source of potable water for his property at the time of the annexation and still did more than four years later. There is no evidence, and no reasonable inference from the evidence, that this situation will change in the future. As for the assertion that the annexation will provide him with a more economical supply of water, there is no evidence of when, if ever, the City will supply him with water or what the cost will be if and when the City does provide him with water. There is therefore no evidence of a demonstrable future need that the City is able to satisfy.

¶ 47. Turning next to the question of the City's need for undeveloped land, there was conflicting evidence on this point and the court did not make findings of fact. The city planner testified that the undeveloped land that could be developed would supply 8% of the land needed by the City over the next eighteen years to accommodate population growth. On the other hand, the planning consultant testifying for the Town opined that the City could satisfy its future housing needs through its own redevelopment within the city limits, and he estimated the undeveloped land would accommodate fewer residences than did the city planner. However, regardless of these differences in opinion, based on the acreage the trial court found could be developed, only 11% of the annexation is able to be developed.[13] Thus, even if we assume for purposes of

---

[13] The Town's consultant testified that about 400,000 square feet could be developed and that represented 11% of the entire annexation. The city planner testified that the Edwards annexation "was about a 100–acre annexation. I think 65 acres roughly is developable. So, the Dawson property, that would be roughly one-sixth." The trial court could not have relied on these estimates by the city planner, because the court found that there were 400,597 square feet for development, which

discussion that the trial court accepted the testimony of the city planner on the City's need rather than that of the Town's consultant, the question is whether the City's need for 11% of the annexed territory to accommodate future housing needs constitutes a reasonable need under the rule of reason.

██ ██

¶ 48. The parties have not brought to our attention any cases that address what portion of annexed territory must be needed by the annexing municipality when there is no evidence of need by the property owners. Our own research discloses that we did address the issue in *Town of Medary*. There we considered the town's contention that the city had not demonstrated a need for the annexation because it did not need additional land for commercial development and commercial land constituted 24% of the annexed property. *Town of Medary*, 88 Wis. 2d at 122. We held that the city "need not have a reasonable need for all the territory within the annexed area. A reasonable need for a substantial portion of the territory, here 76%, is sufficient." *Id.* at 123. Based on *Town of Medary*, we conclude that, when no need is shown by the property owners, the annexing municipality must have a reasonable present or demonstrable future need for a substantial portion of the annexed territory. Whatever the precise definition of "substantial portion," we conclude that 11% is not a substantial portion. We therefore agree with the Town that the City does not have a reasonable need for the Edwards annexation.

corresponds to the Town consultant's "about 400,000 [square] feet." In addition, the Town in its response brief asserts that the developable land is 11% of the annexation and the City does not dispute that. Accordingly, we use 11%.

¶ 49. Based on the facts as found by the trial court and the undisputed evidence in the record, we conclude that neither the property owners nor the City has a reasonable need for the Edwards annexation. On this ground, we affirm the trial court's judgment invalidating the Edwards annexation.

## CONCLUSION

¶ 50. We affirm the trial court's conclusion that the Becker, Smith, and McCormick annexations did not violate the rule of reason. However, because the trial court did not exercise its discretion in deciding whether to allow the Town's amendments to the complaints, we reverse the judgments dismissing these complaints and remand for the trial court to exercise its discretion. If the court in the proper exercise of its discretion denies the motion to amend, then it shall reinstate the judgment that the Becker, Smith, and McCormick annexations are valid and the complaints are dismissed. If, on the other hand, the trial court in the proper exercise of its discretion grants the motion to amend, it shall conduct such further proceedings as may be necessary.

¶ 51. Because we agree with the trial court's conclusion that the Edwards annexation did violate the rule of reason, we affirm the trial court's judgment that this annexation is invalid and that this annexed property shall revert to the Town of Campbell.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded with directions.

## SMITH ANNEXATION

289

# BECKER ANNEXATION

# MCCORMICK ANNEXATION

291

# EDWARDS ANNEXATION

EDWARDS ANNEXATION